### J. Davis v. The State.

#### No. 1409. Decided November 22, 1911.

**1.—Burglary—Continuance—Diligence—Husband and Wife—Infirm Witness.**

Where, upon trial of burglary, there was due diligence in issuing subpoena for defendant's wife, who was unable to attend the trial on account of her confinement in childbirth, the statute with reference to infirm witnesses did not apply, and the testimony in the case being wholly circumstantial, it was reversible error to overrule the motion for continuance.

**2.—Same—Motion for New Trial—Contests—Practice.**

The practice in contests raised on motion for new trial to introduce testimony as to the merits of the case on trial before the judge can not be tolerated; these matters are to be disposed of on trial of the case, and not by affidavit or the production of the witnesses before the court on motion for new trial.

**3.—Same—Circumstantial Evidence—Inculpatory Facts.**

Where, upon trial of burglary, the inculpatory facts were weak and purely circumstantial, and the absent witnesses would have positively testified to an alibi, and there was due diligence in obtaining at least some of them, a motion for new trial should have been granted.

**4.—Same—Argument of Counsel.**

Where, upon trial of burglary, the argument of State's counsel was calculated to injure the rights of defendant and was rather unfair, the court should not have declined to submit written requested instructions to withdraw the same, and it is not sufficient to give oral instructions.

Appeal from the District Court of Clay. Tried below before the Hon. P. A. Martin.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of burglary, his punishment being assessed at two years confinement in the penitentiary.

1. The case is one of circumstantial evidence. No witness testifies with any degree of accuracy or certainty to facts which would show appellant's presence at the time and place of the burglary. It is claimed by one of the witnesses for the State that he met appellant and two other parties at the edge of the little town of Charlie going in the direction of the alleged burglarized house, which is something like two miles from where he met them. This was after dark. It is claimed by the witnesses that two tracks were found at the burglarized house; they were traced from the burglarized house east in the direction of the little town of Charlie, which was east, until they reached a certain point where the tracks separated and both were lost. The witnesses were unable to follow them. It is also shown that appellant, when met by the witness, going in a westerly direction of the little town of Charlie was going as well in the direction of home and could have gone by that road home, his residence being about northwest of the little town of Charlie and about a mile distant. The theory of the State was that L. D. McGrew and his son were the other two parties. Somewhere from three to six hundred yards from McGrew's house was found buried some hams and shoulders which, it is claimed, were taken from the burglarized house. This meat was practically as near the residence of other people as that of McGrew. Near the residence of appellant on Monday after the alleged burglary on Saturday night was found two hams and one-half of a shoulder of bacon. One of these hams was identified by the alleged owner by reason of certain marks placed on it in cutting into it to ascertain if it was spoiled. The defensive theory was an alibi. The appellant himself testified that he did not meet the State's witness, as stated by that witness, but that he went another road home, and had no connection or participancy in the burglary.

This much of the case is stated in a general way in order to discuss the application for a continuance. This application was sought on account of two witnesses. The diligence, up to the time of the application being overruled, was unquestionably sufficient. It was the first application. The State's contention, after overruling the application for continuance, was that the attendance of one of the witnesses could have been secured. The wife of the defendant was in such condition that she could not attend the trial. She had recently been confined and had not sufficiently recovered to leave home and attend the court. By his wife appellant expected to prove that he was at home on the night of the alleged burglary, and reached home from the little town of Charlie about 8:30 o'clock and re-

mained at the house the entire night. The house was evidently burglarized at a time when appellant, if her testimony is true, could not have been a participant. He expected to prove that appellant never brought any meat to his house and did not bury the meat found near their home. There was a certificate of a physician made a part of the application showing that Mrs. Davis, appellant's wife, was not able to attend court. By the witness Ernest Davis he expected to prove that on the night of the alleged burglary he met appellant north of the schoolhouse going home; that it was after 8 o'clock when he met him and he was alone at that time and that he had a conversation with appellant. Among other things, he mentioned the fact that he was en route home; that this testimony would positively contradict the witness Neal, who testified he met appellant going west. The absent witness Davis placed him going north; Neal placed him going west. It may be stated in a general way that the testimony of the absent witnesses would have contradicted the State's witness Neal and shown that it would have been an impossibility, under their testimony, for appellant to have been connected with the burglary. It may also be stated in a general way that there was no question of the fact that appellant was in the little town of Charlie at dark and was seen and talked to by witnesses who testified in the case. He testifies to the same fact and also that he went north and not west in going home. His residence was fully two miles or more from where the house was burglarized and a mile or more from where McGrew lived. It is also stated in the application that they did not have time to take the depositions of the wife; and further stated that they did not believe that they were legally required to do so. A bill of exceptions was reserved to this action of the court. Upon the motion for a new trial appellant exhibited, as a part of his application, the affidavit of the absent witness Ernest Davis, in which he swears that he met appellant, as stated by appellant in the application. In other words, he would have testified, he swears, as was set out in the application. The affidavit is sufficiently full to set out all the facts. There is also a certificate of John Bevering made a part of this application, in which he states that he went to a party at Mr. Leath's, reaching there about 9:30 o'clock. The State contested this and filed also an affidavit of Ernest Davis, showing that he was a nephew of appellant, and his father told him to stay at home and that accounted for his absence as a witness. It is further stated in the affidavit that no attachment was issued for him after his disobedience of the subpoena, and that if he had been phoned to come to court as a witness he would have attended. It is also made to appear in one of the affidavits that there was another reason for his staying at home besides the injunction of his father and that is, his mother was alone. Leach filed an affidavit for the State to the effect that Ernest Davis was at his house at a party that night, and that he reached there about 8 o'clock and left about 11

o'clock. All of this controversy on the motion for a new trial pertained alone to the witness Ernest Davis and not to the wife. The contention of the State is that sufficient diligence was not used for the wife, because her depositions were not sought. The idea underlying this contention seems to be that the wife was brought within the statutory terms of being an infirm witness. In regard to the contest over the motion for a new trial, we would say that if such contests are to prevail it would amount in the end to an abolition of the trial by jury. If an application for continuance is good on its face, and sets up the material facts, can be overruled and then all matters in regard to the materiality of the testimony be tried by the judge on affidavits or otherwise, this would be transferring from the jury the trial of cases on their merits, to the trial by the judge on motion for new trial. The mere statement of this proposition ought to show its error. Under our system we have the jury trial in order to ascertain the facts, and such trial can not be waived. The jurors are made the judges of the facts, credibility of the witnesses and the weight to be given their testimony. These matters are to be disposed of on the trial of the case and not by affidavit or the production of the witnesses before the court on motion for new trial. The jury may have believed these absent witnesses to the exclusion of those who were in opposition to them, or they may have believed the other side. What the jury would have decided with all this testimony before them is a matter of pure speculation, but it is not a speculation to say that under this character of practice the jury was not permitted to pass on the facts. It would necessarily follow that if this practice is to obtain, then the constitutional guaranty of the right of the accused person to have a jury pass on the facts as bearing upon the charges preferred against him, would be transferred from the jury and tried before the judge on motion for new trial. This character of practice is not to be tolerated. It has been heretofore considered legitimate to introduce the affidavit or the statement of the absent witness as to the truthfulness of the allegations in the application for a continuance as to what he would swear, and it has been thought that it was not infringing the rights of trial by jury, but it has never been thought to be a matter of great moment, for the general rule is that the application for continuance can be considered upon its merits as presented to the court, and if overruled then that application, with its contents, will be viewed from the standpoint of the facts as introduced before the jury when raised on motion for new trial. These statements are made in view of the fact of the manner in which this case was tried before the judge as to the merits of the testimony of the absent witnesses.

In regard to the seeming position of the State that Mrs. Davis was an infirm witness, which authorized the defendant to take her deposition, we want to say that this is not correct. The statute has no reference to a woman who has been confined in childbirth. It

meant what the statute said—an infirm witness. We do not propose to go into a discussion of what an infirm witness is, but do propose to say that the simple fact that a woman had given birth to a child would not render her infirm. The mere fact that under the laws of nature she would be some weeks in recovering the ordinary vigor and strength of womanhood would not place her in the category of an infirm person. In fact, we would rather, if expressing any conclusions in the matter one way or the other, say that it is pretty clear evidence that a woman under those circumstances would be excluded from any definition of infirmity. It would rather exclude the idea that a woman was infirm. We do not believe that the women who are young enough and vigorous enough to bear children ought to be considered infirm in Clay County, and are satisfied that they would not be considered so elsewhere.

As to the merits of the application for continuance, viewed in the light of the motion for new trial, we are of opinion it should have been granted. The State's case is far removed from being satisfactory. Neal stated that he met appellant and two others at the edge of the little town of Charlie going west. That would place the three men going in the direction of where the house was burglarized, and it was something like two miles west of the little town of Charlie. He says he recognized the defendant and spoke to him and the defendant grunted at him. There were some tracks at the burglarized house and the evidence in that respect is very confusing. However, the State's witnesses make it fairly clear that they saw two tracks and perhaps three, one being very large, such as would have been made by McGrew. However, it is satisfactorily shown also that there are other people living in the same neighborhood who wore about the same number of shoe, and one of them a very close neighbor to Mr. McGrew. The other track, the witnesses describe, as a small track and they differ about the number and size of the shoe worn, No. 6, 7 or 8. It is also testified by one of the witnesses, an officer, that if appellant was wearing the shoes he had on at the trial, it was not possible for him to have made the tracks under discussion. The shoes were not so constructed as to have made that track.

The other fact in the case upon which the State relied was that near the house of the defendant was found some bacon covered up in a sack which had been buried; one piece of this had been identified by the alleged owner. Appellant denied all knowledge of this meat being there and testified that he was not with McGrew that night and did not see him. With the statement of facts in this condition, and appellant having no witness but himself before the jury to testify as to his whereabouts that night, the evidence of the absent witnesses was very material. A very safe rule in cases of this character has been stated by this court about as follows: "If there is such conflict between the inculpatory facts and those set forth in the application as to render it improbable that the facts stated in

the application are material and probably untrue, the continuance should be refused; and hence, a new trial based thereupon should also be refused. There must, however, not only be such a conflict, but the inculpatory facts must be so strong and convincing as to render the truth of the facts set forth in the application improbable." McAdams v. State, 24 Texas Crim. App., 86; Hollis v. State, 9 Texas Crim. App., 643; Mitchell v. State, 36 Texas Crim. Rep., 278; Hooper v. State, 29 Texas Crim. App., 614; Henry v. State, 38 Texas Crim. Rep., 306. The inculpatory facts are weak and purely circumstantial. The absent witnesses would have positively testified to the absence of appellant from the scene of the alleged crime, making it impossible under their testimony, for appellant to have been connected with the burglary. It was about two and a half miles to the scene of the burglary to where appellant lived. Whether true or false, it was in direct conflict with the State's testimony and met the State's theory at every point. The weight to be given the testimony of these witnesses was for the jury, and parties accused of crime in Texas have a right to have their exculpatory testimony passed on by the jury before life or liberty is taken. The court charged the jury with reference to alibi, but as to what the verdict of the jury might be or might have been with the testimony of these absent witnesses before them is to some extent speculative. That it was material is not the subject of discussion, for it met the State's case at its strongest points and was in direct conflict with it.

2. During the closing argument of the prosecuting officer, he said to the jury: "Davis had some testimony that he could have gotten, and that was Ernest Davis, because he testified that he met Ernest Davis as he went home." Objection was urged and the court instructed the jury orally to disregard this. Appellant asked a special charge in writing to be given to the jury. The court declined to give this written instruction. Whether we would reverse upon that question alone is perhaps not necessary now to decide, but we want to say that our statute expressly provides that the court shall give a charge in writing to the jury. We have also held in cases, as a usual rule, that it is necessary for appellant to ask a written instruction in regard to the remarks and comment of opposing counsel if they desire such instruction. Here the court not only did not give the instructions, but declined to give one specially prepared by appellant. Before leaving this, we desire to say that under the peculiar facts of this case this statement of the prosecuting officer was calculated to impress the jury adversely to appellant and in a rather illegitimate way. The motion for continuance had been overruled asking for the presence of this witness. He was not there. So far as the trial was concerned up to this point, this statement of the prosecution was in the face of the record. The witness had been summoned and was absent; appellant sought a continuance to secure his attendance and the court overruled it. Just how, under those circum-

stances, appellant could have been responsible for the absence of the witness is not by any means clear. We wish to again caution prosecuting officers to avoid arguments of this sort before the jury. A verdict obtained under those circumstances is unfair, legally speaking, and is unfair in fact. While in many instances it may not amount to much, in others it becomes of serious import and to such an extent that this court has been called upon to rebuke by reversing the judgment. We wish again to say that these matters should be avoided on the trial. The attorney should not become so enthused in pressing for success as to step out of the record and inject damaging matters and statements into a case.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*